**Montgomery McCracken Walker & Rhoads LLP**
437 Madison Avenue, 29th Floor
New York, New York 10022
(212) 201-1931 / (212) 867-9500

Attorneys for Petitioner

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
D/S NORDEN A/S,

       Petitioner,

   v.              **PETITION TO**
                    **COMPEL ARBITRATION**
CHS de PARAGUAY, SOCIEDAD de
RESPONSABILIDAD LIMITADA (SRL),

       Respondent.
-------------------------------------------------------------X

  Petitioner Norden AS ("Norden") brings this petition to compel Respondent CHS de Paraguay, Sociedad de Responsabilidad Limitada ("SRL") ("CHSP") to arbitrate, and in support thereof alleges on information and belief:

  (1) Petitioner brings this proceeding pursuant to 9 U.S.C. § 4.

  (2) Petitioner is a business organized and existing under the laws of the Kingdom of Denmark with an office and principal place of business in Copenhagen, Denmark.

  (3) CHSP is a business organized and existing under the laws of the Republic of Paraguay with an office and principal place of business in Hernandarias, Paraguay.

  (4) CHS, Inc. ("CHS") indirectly owns about 99 percent of CHSP. CHS, Inc. annually prepares a consolidated financial statement, which includes the financial results for CHSP. The business of both CHS and CHSP is, among other activities, the purchase, sale, and

4008316v4

shipment of agricultural products including soy beans. CHS has reported in its 2015 "Board Newsletter" that its worldwide operations, including those of CHSP, are "integrated" into CHS' global supply chain, and that the South American production allows the CHS system to supply customers around the world. CHS holds itself out as a Fortune 100 company. It is headquartered in Inver Grove, Minnesota and has subsidiaries in Canada, Geneva, Switzerland, Singapore and Sao Paulo, Brazil. Each regional headquarters has additional offices in its respective geographic region. The group has offices in 23 countries round the world.

(5)   It appears that CHS performs numerous functions on behalf of CHS group members including chartering vessels when affiliates, subsidiaries, and related companies are obligated to provide transportation pursuant to their contracts with third parties. This appears necessary because CHSP has only five employees.

(6)   CHS Europe sold a cargo of about 30,000 tons described as "Paraguayan soybeans" to customers in Taiwan who were the receivers of the goods. CHS Europe sourced the soy beans from CHSP and delegated the shipping documentation including preparation of the bills of lading to CHSP. The cargo was loaded on board the M/V CMB Edouard in Nueva Palmira, Uruguay.

(7)   At all material times, Petitioner Norden was the time chartered, or disponent owner of the M/V CMB Edouard, pursuant to a written charter party with Bohandymar, Ltd. dated March 25, 2015, a true and correct copy of which is attached as Exhibit A.

(8)   The parties used as a form an earlier charter between themselves for the M/V CMB Juliette. The recap of the fixture for the M/V CMB Edouard provided:

> "15. No C/P to be made, but recap to include the following: 'This fixture recap will be deemed the only contractual charter party document. Therefore it is agreed that no original charter/parties will be required or exchanged for signature.'"

. . .

> "18. OWISE (as per Norden Bociman) CP DD 8 FEB 2013 WITH LOGICAL ALTERATIONS AMENDMENTS AS PER M/TERMS EXCEPT...."

By contract dated January 16, 2015, which is a written commercial agreement, Norden voyage chartered the M/V CMB Edouard to CHS, Inc. (hereinafter referred to as "subcharterer"). A true and correct copy of that charter party and recap are attached as Exhibit B. The recap for the subcharter provides: "Otherwise, as per MV Almendro/CHS CPDD 25 July 2013 logically amended to reflect Argentine or Uruguay load and the following additional clauses."

(9) The subcharter called for the vessel to load a full cargo of soy beans and deliver them in Taiwan.

(10) On April 5, 2015, the vessel M/V CMB Edouard completed loading in Nueva Palmira, Uruguay and the Master signed bills of lading prepared by or on behalf of the shipper CHSP. True and correct copies of the bills of lading are attached as Exhibit C. Under clause 10 of the subcharter, the master of the vessel is to grant authority to "charterers or their agents" to sign "Bills of Lading on his behalf always in conformity with mate's receipt."

(11) The subcharter required that all bills of lading issued for the carriage of cargo pursuant to that agreement incorporate the terms of the charter into the bills of lading.

(12) Although the bills of lading are "clean on board", indicating apparent good order and condition of the cargo, evidence now in hand indicates that the soy beans contained mold on loading and so were not in good order and condition when loaded. If the soy beans were not in

good order and condition when loaded, then CHSP as shipper has breached its obligation to provide a cargo reasonably fit for carriage.

(13)     The bills of lading issued to CHSP (Exhibit C) were negotiable bills "To the order of" various banks in Taiwan. The respective banks negotiated the same bills of lading to the receivers who were to take actual delivery of the cargo.

(14)     The Taiwanese government refused to allow importation of this cargo at the ports of discharge because the cargo was "not fit for consumption."

(15)     This rejection of the cargo has to date produced the following claims:

    (a)   The Taiwanese receivers of the cargo arrested the vessel M/V CMB Edouard and released her only when the true Owners, Bohandymar, Ltd., gave security in Taiwanese currency in the amount of 324,000,000, which at current exchange rates with the U.S. dollar amounts to about $9,994,450.00.

    (b)   The vessel remained idle because of the arrest for about 33 days.

    (c)   Bohandymar, Ltd., anticipating it would have a claim for indemnity against Norden for any liability it may have to the Taiwan receivers, required Norden to post counter-security in the amount of $14 million, which Norden has done.

    (d)   Bohandymar, Ltd. has claimed hire from Norden in the amount of U.S. $354,744.15 covering the period the vessel was under arrest in Taiwan and hence unavailable for service under the time charter. In order to avoid seizure of its assets, Norden, although disputing the claim, has with Owners' agreement, placed this same sum of $354,744.15 into escrow pending the outcome of an arbitration proceeding in London to determine whether in fact hire was due for this period.

    (e)   Norden also seeks indemnity for detention-delay charges it may owe Bohandymar caused by CHS' conduct, now estimated to be $621,443.84.

(16)     Claims under the Norden/CHS subcharter are subject to arbitration in New York. The recap of the agreement provided:

    "Arbitration in New York, U.S. law to apply…"

The form charter provided:

> "35.  Any dispute between Owners and Charters arising out of this Charter shall be arbitrated at New York…  The arbitrators shall be commercial men.  U.S. Law to apply…
>
> . . .58.  …. Arbitration, if any, to take place in New York U.S. Law to apply."

(17)   The Norden/ CHS subcharter also required, inter alia, under the form used with the recap, that the bills of lading incorporate the charter party in the following language:

> "42.  It is also mutually agreed that this contract shall be completed and superseded by the signing of the bills of lading which shall be deemed to incorporate the above clauses as well as containing the following additional clause(s):
>
> This bill of lading hall have effect subject to the provisions of The Carriage of Goods By Sea Act of the United States approved April 16, 1936, which shall be deemed incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such terms shall be void to that extent but no further."
>
> Additional Claus 72 required:  "Bills of Lading under this charter party to be BFC form."

Such incorporation of the subcharter terms into the bills of lading would have the effect of binding all those with an interest in the bills of lading, including but not limited to CHSP as shipper, and the cargo receivers as holders of the bills of lading with the terms of the charter, including the New York arbitration clause and application of the U. S. Carriage of Goods by Sea Act to determination of the rights and liabilities of the parties *vis a vis* the alleged cargo loss.

(18)   The bills of lading on their face refer to the charter party in the following terms:

"C/P Dated: As Per Governing Charter Party," "Freight payable as per CHARTER-PARTY dated as per governing charter party."

The reverse of the bills provides: "BILL OF LADING" to be used with charter-parties…"

(19) Respondent contends that the above language is insufficient to bind the bill of lading holder to the New York arbitration clause in the charter. If it is held that the charterparty terms were not properly incorporated into the bills of lading issued for the subject cargo, then (a) CHS has breached its charterparty contract with Norden; and (b) CHSP, who, on information and belief, prepared the bills of lading has caused a breach of the subcharter.

(20) As a result of the alleged failure to incorporate the charterparty terms properly into the bills of lading, Petitioner is facing the prospect of:

(a) Inconsistent results on an indemnity claim by Owners for the cargo loss based on Receivers' potential recovery in Taiwanese courts under a regime of law other than the U.S. Carriage of Goods by Sea Act;

(b) Prosecution of a claim for indemnity/contribution against CHSP and/or CHS in New York arbitration with the risk of inconsistent results and extra expense when proper incorporation of the charter in the bill would have bound CHSP and CHS as well as the receivers to arbitrate the claims in New York;

(c) Inability to have all claims for cargo loss decided under the U. S. Carriage of Goods by Sea Act, thus eliminating the risk of inconsistent results and the expense of multiple proceedings;

(d) Inability to obtain evidence in New York proceedings from foreign entities not parties to these proceedings;

(e) The possibility that Norden will have to go to Paraguay to prosecute its claims against CHSP; thus adding to the expense of the matter and heightening the risk of inconsistent results.

**JURISDICTION AND VENUE**

(21) Because the charter party and ocean bills of lading are maritime contracts, this court has subject matter jurisdiction over this cause under 28 U.S.C. § 1333.

-6-
4008316v4

(22)   Alternatively, the Republic of Paraguay, the Kingdom of Denmark, and the United States are parties to the 1958 New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The contract Petitioner seeks to enforce is written and commercial, and the subject matter of the dispute is not entirely domestic. Therefore, this court also has subject matter jurisdiction under 9 U.S.C. § 203 granting federal question jurisdiction (28 U.S.C.§ 1331) to matters arising under the forgoing Convention. Under 9 U.S.C. § 206 this court may compel arbitration and appoint an arbitrator on CHSP's behalf.

(23)   Venue in this district is proper because the subcharter calls for arbitration in New York. (See Exhibit B.)

(24)   Personal jurisdiction over the Respondent exists by virtue of the agreement made on its behalf and/or by its agent to arbitrate in New York. Further, the agreement was negotiated by CHS, a United States based entity, with Norden's office in Annapolis, Maryland, through a broker in Stamford, Connecticut. Likewise, given designation of New York as the forum for dispute resolution, Respondent could reasonably have anticipated being compelled to participate in proceedings in New York.

(25)   By letter dated June 5, 2015, a true and correct copy of which is attached as Exhibit D, Petitioner appointed its arbitrator as the subcharter provided, and demanded that CHSP arbitrate all claims and appoint its arbitrator. To date, CHSP has failed to respond to the letter.

## COUNT I

(26)   Petitioner incorporates by reference paragraphs 1 through 25 as if set forth.

(27) By virtue of the facts recited herein, CHS Inc. and CHSP are inextricably intertwined, and fairness requires that CHSP be bound to arbitrate these disputes with Petitioner.

## COUNT II

(28) Petitioner incorporates by reference paragraphs 1 through 27 as if set forth fully herein.

(29) CHSP knew or should have known that the charter party required that the bills of lading incorporate the subcharter party terms.

## COUNT III

(30) Petitioner incorporates by reference paragraphs 1 through 29 as if set forth fully herein.

(31) CHSP was CHS' undisclosed principal, and is therefore bound by the Norden/CHS subcharter.

**WHEREFORE**, Petitioner prays for an order:

(1) Compelling CHSP to arbitrate;

(2) Appointing an arbitrator on CHSP's behalf;

(3) Compelling CHS to arbitrate as agent for its undisclosed principal;

(4) Alternatively, if the court finds that evidence is required to support the relief requested, then discovery on the issues relevant to the complaint; and

(5)     Such other and further relief as may be just in the circumstances, including the fees and costs of this application.

Dated:  March 22, 2016

Respectfully,

Vincent M. DeOrchis, Esquire
Alfred J. Kuffler, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
437 Madison Avenue, 29th Floor
New York, NY  10022
(215) 867-9500
vdeorchis@mmwr.com
akuffler@mmwr.com

Attorneys for Petitioner D/S Norden A/S

4008316v4