UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

D/S NORDEN A/S,

       Petitioner,

  -v-                          No. 16 CV 2274-LTS

CHS de PARAGUAY, SRL,

       Respondent.

--------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Petitioner D/S Norden A/S ("Norden") commenced this proceeding to compel Respondent CHS de Paraguay, SRL ("CHSP"), to arbitrate a commercial shipping dispute. (See docket entry no. 20 (Amended Petition to Compel Arbitration (the "Petition")).) CHSP has moved, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss the Petition for lack of personal jurisdiction and for failure to state a claim. This Court has subject matter jurisdiction of this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1333.

The Court has carefully considered the submissions of both parties and, for the reasons stated below, CHSP's motion is granted and the Petition is dismissed.

### BACKGROUND

The following facts relevant to the disposition of this motion to dismiss are drawn from the Petition, which includes several exhibits, and are assumed to be true for purposes of this motion.

CHS Inc. ("CHS") is a Minnesota-based global trader in agricultural products.

(Petition ¶¶ 6-11.) CHS has numerous wholly-owned subsidiaries, including CHS Singapore and CHS Holdings Inc., through which CHS indirectly owns CHSP. (Id. ¶¶ 14-15.) CHS also wholly owns CHS Europe ("CHSE"). (Id. ¶ 13.) CHS issues consolidated financial statements that incorporate the financial results of CHS' wholly-owned and majority-owned subsidiaries without separate delineation. (Id. ¶ 15.)

CHS contracted with Norden to voyage charter the vessel M/V CMB EDOUARD on January 16, 2015. (Id. ¶ 27.) Norden had previously chartered the vessel from Bohandymar, Ltd., and the Norden/CHS voyage charter is therefore referred to in the Petition, and will be described here, as "the Subcharter." (See id. ¶¶ 25-28.) Norden alleges that CHS entered into the Subcharter "on behalf of its undisclosed principal, CHSP." (Id.) The Subcharter specified that the vessel would load a cargo of soy beans in Uruguay and deliver them in Taiwan. (Id. ¶¶ 28-29.) This cargo was arranged for by CHSE, which sent invoices to customers in Taiwan for the soy beans. (Id. ¶ 21 & Ex. E.) CHSP is identified as the "shipper" on the bills of lading issued in connection with the Subcharter. (Petition ¶ 41 & Ex. F.)

The Subcharter contained an arbitration clause reading: "Any dispute between Owners and Charterers arising out of this Charter shall be arbitrated at New York." (Petition ¶ 53 & Ex. H.) Petitioner Norden is considered the disponent owner of the vessel under the Subcharter. (Petition ¶ 25.) Norden asserts that CHSP is a "Charterer" subject to the arbitration clause because it was the undisclosed principal of CHS, the named Charterer. (Id. ¶ 54.)

The Subcharter required that all bills of lading incorporate the terms of the Subcharter. (Id. ¶ 55 & Ex. H.) The bills of lading noted that they were issued "As Per Governing Charter Party." (Petition Ex. F.)

The soy beans shipped pursuant to the Subcharter were deemed "not fit for

consumption" by Taiwanese government authorities.  (Petition ¶ 51.)  As a result, various claims have been asserted by and against Bohandymar, Ltd., Norden, and CHS.  (Id. ¶ 52.)  Norden brought the Petition to seek to compel CHSP to arbitrate its dispute; Norden has already initiated arbitration proceedings against CHS.  (Id. ¶¶ 52, 65.)

DISCUSSION

CHSP has moved to dismiss the Petition for lack of personal jurisdiction and for failure to state a claim.  Norden's theory of personal jurisdiction is premised on the same legal argument underlying the merits of the Petition: that CHSP is bound by the arbitration agreement in the Subcharter because CHSP was the undisclosed principal of CHS.  Accordingly, disposition of this legal question will suffice to resolve both aspects of CHSP's motion to dismiss.  As explained below, because Norden's agency theory is not pleaded plausibly, the Petition fails to state a claim for which relief may be granted and the Court lacks personal jurisdiction over CHSP.

On a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), the petitioner "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013) (internal quotation marks and citation omitted).  If the respondent challenges personal jurisdiction by filing a Rule 12(b)(2) motion, the petitioner "need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction."  Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) (internal quotation marks and citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the petition must plead

"enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The petition must proffer sufficient non-conclusory facts to "plausibly suggest an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). A complaint that contains only "naked assertion[s]" will not suffice. Twombly, 550 U.S. at 557.

In evaluating a Rule 12(b)(2) motion, the court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013). Similarly, under the Rule 12(b)(6) standard, the Court accepts as true the non-conclusory factual allegations in the petition and draws all reasonable inferences in the petitioner's favor. See Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). When determining the sufficiency of a claim under Rule 12(b)(6), "a district court may consider the facts alleged in the [petition], documents attached to the [petition] as exhibits, and documents incorporated by reference in the [petition]." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

The Federal Arbitration Act (the "FAA") "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)) (internal quotation marks omitted). If a provision providing for arbitration is part of a contract "affecting interstate or international commerce, it is governed by the [FAA]." Shaw Group Inc. v. Triplefine Intern. Corp., 322 F.3d 115, 120 (2d Cir. 2003). "Pursuant to the FAA, the role of courts is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'" Id. (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996)).

The Subcharter contains the sole agreement to arbitrate identified in the Petition and, as a contract affecting international commerce, it is subject to the FAA. The Subcharter's arbitration clause binds only "Owners and Charterers." The Second Circuit has noted, in discussing a nearly identical arbitration clause (which required arbitration between "the Disponent Owners and the Charterers") that this language "is restrictive in scope." Import Export Steel Corp. v. Mississippi Valley Barge Line Co., 351 F.2d 503, 505 (1965). An arbitration clause limited to owners and charterers is "narrower than" one that calls for arbitration of "[a]ny and all differences and disputes of whatsoever nature arising out of this charter." Id. at 505-06 (internal quotation marks omitted). The Court construes the Subcharter's scope in accordance with the plain meaning of its express terms.

Accordingly, in order to prevail on its contention that CHSP is bound by the Subcharter's arbitration clause, Norden must establish that CHSP is an "Owner" or "Charterer" under the Subcharter.[1] For purposes of this motion practice, the Court examines whether Norden has alleged facts sufficient to plead plausibly such status. Norden seeks to demonstrate an obligation to arbitrate, and personal jurisdiction, by showing that CHSP acted as the undisclosed principal of CHS, which Norden asserts signed the Subcharter as the agent of CHSP.[2] On this theory, CHSP is bound to the arbitration agreement because its agent, CHS, is a party to, and

---

[1] Because the arbitration clause is restricted to Owners and Charterers under the Subcharter, the Court need not engage Norden's arguments that (1) the Subcharter's arbitration clause is incorporated into the bills of lading, (2) Norden is a party to the bills of lading, and (3) that CHSP's use of an incorrect form of the bills of lading acts as an estoppel, prior to determining whether Norden has shown that CHSP is an Owner or Charterer.

[2] Norden explicitly disclaims reliance on veil-piercing and alter-ego theories of liability in its opposition to CHSP's motion, and the Court accordingly does not consider those doctrines here. (See docket entry no. 29, Petitioner's Mem. in Opp., at 10-11.)

Charterer under, the Subcharter.  See, e.g., McAllister Bros. v. A&S Transp. Co., 621 F.2d 519, 524 (2d Cir. 1980) (noting that "ordinary principles of contract and agency determine which parties are bound by an agreement to arbitrate").

Norden first argues that this case is governed by Amoco Overseas v. S/T Avenger, 387 F. Supp. 589 (S.D.N.Y. 1975).  In that case, the court was concerned solely with which parties were bound to the arbitration agreement, which in that case turned on "whether the bill of lading . . . effectively incorporated the terms of the charter party."  Id. at 590.  The S/T Avenger Court held that the bill of lading did incorporate the charter party's arbitration clause because the holder of the bill of lading was "so intimately intertwined" with a signatory to the charter party as to make clear to the court that the parties intended the bill of lading to incorporate the charter party's terms.  Id. at 592-93.

However, in S/T Avenger, the arbitration clause applied broadly to "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter."  Id. at 590 n.1.  The S/T Avenger Court specifically noted that "[c]ourts have reached other results in other cases, where, for example, the arbitration clause in the charter party read 'Should any dispute arise between the Disponent Owners and the Charterers, . . .' the matter is to be referred to arbitration."  Id. at 592 (quoting Import Export Steel Corp., 351 F.2d at 505-06).  As noted above, the Subcharter language at issue here is cast in this narrower form of arbitration clause.  Norden's reliance on S/T Avenger is therefore misplaced.  As in Import Export Steel Corp., the Subcharter's arbitration clause does not, by its plain terms, apply to "a mere notify party, or even owner of the cargo," but only to the owners and charterers of the vessel – here, CHS and Norden.  351 F.2d at 506.  Thus, even if S/T Avenger's incorporation by reference analysis were persuasive on the facts now before the Court, it would be insufficient to support a conclusion

that CHSP is a Charterer required to arbitrate.

Norden's remaining argument is that CHSP was the undisclosed principal of CHS, and that CHS acted as an agent of CHSP when entering into the Subcharter. The Second Circuit has held that Federal maritime law, which is the governing substantive law in admiralty cases, "embraces the principles of agency, including the doctrine that an undisclosed principal is bound by the contracts made on his account by an agent acting within his authority." Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980) (internal citation omitted). In Kirno Hill, the Second Circuit cited the Restatement 2d of Agency, section 186, which defined the scope of liability for undisclosed principals as extending to "contracts and conveyances made on [the principal's] account by an agent acting within his authority."

The Petition does not plausibly allege facts that demonstrate an undisclosed agency relationship between CHS and CHSP. Although Norden repeatedly asserts in the Petition that CHS was acting as the agent for CHSP as an undisclosed principal, this mere naked assertion of a legal conclusion is insufficient to plead an agency relationship. The facts that Norden does allege in the Petition – corporate affiliate status, as well as ownership and control – are facially insufficient to support a finding of agency. See Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 130 (2d Cir. 2003) (holding that an "affiliate relationship" and "mutual benefits derived from affiliation" were "insufficient to bind a non-signatory on agency principles to an arbitration agreement signed by an affiliate"). Nor are Norden's unelaborated assertions that CHSP and CHS "agreed" to an agency relationship and that "CHS acted pursuant to the instructions and control of CHSP" (Petition ¶ 74) availing in this respect. In light of the allegations of an integrated global supply chain and agricultural activities within the CHS conglomerate, while it is possible that the two members of the conglomerate acted pursuant to an

agency agreement rather than simply carrying out their delimited responsibilities as separate companies within the group, Norden has not alleged facts sufficient to push that possibility over the line to plausibility.  Cf. Twombly, 550 U.S. at 557 ("An allegation of parallel conduct is thus much like a naked assertion of conspiracy . . . it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." (Internal quotation marks and modifications omitted)).

      Accordingly, Norden has failed to make a prima facie showing, and has failed to plead facts that plausibly allege, that CHSP is bound to the Subcharter's arbitration clause.  Norden's request for jurisdictional discovery is denied, as Norden has not alleged any facts that would support its theory of personal jurisdiction based on agency, and such discovery would merely be a "fishing expedition for a jurisdictional basis."  Gear, Inc. v. L.A. Gear California, Inc., 637 F. Supp. 1323, 1328 (S.D.N.Y.1986).  This Court therefore does not have personal jurisdiction over CHSP, nor does the Petition state a valid basis to compel CHSP to arbitrate.

## CONCLUSION

      For the foregoing reasons, CHSP's motion to dismiss the Petition is granted.  This Memorandum Opinion and Order resolves docket entry no. 24.  The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

    SO ORDERED.

Dated: New York, New York
      February 3, 2017

                                                /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            United States District Judge